UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 14-CIV-62674-BLOOM/Valle**

YESENIA NOVOFERREIRO,

    Plaintiff,

v.

SCOTT ISRAEL, in his capacity as
Sheriff of Broward County, Florida,

    Defendant.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendant Broward Sheriff's Office's ("Defendant" or "BSO") Motion to Dismiss, ECF No. [19] (the "Motion") with respect to Plaintiff Yesenia Novoferreiro's ("Plaintiff") Amended Complaint, ECF No. [15]. The Court has carefully reviewed the Motion, all supporting and opposing submissions, the record in this case and applicable law. For the reasons set forth below, the Court in part grants the Motion.

### I.   FACTUAL ALLEGATIONS

Plaintiff filed the instant action on November 24, 2014, asserting claims against Defendant for violation of her civil rights under 42 U.S.C. § 1983 and for common law false imprisonment and negligence. ECF No. [1] (the "Complaint"). In brief, Plaintiff alleges that, while she was properly arrested and detained on October 16, 2013 pursuant to a valid warrant (for violation of pretrial release conditions in connection with separate charges of uttering forged bills, the "Warrant"), the sole basis for her detention by Defendant between October 30, 2013 and November 7, 2013 was Defendant's erroneous belief that criminal charges were still pending against Plaintiff. Plaintiff claims that Defendant's "policies instituted a system that had no

safeguard for individuals whose charges were dropped when the individual was being held for pickup by [Defendant] in another Florida county." Compl. ¶¶ 29, 40, 51. On January 16, 2015, Defendant filed a motion to dismiss the original Complaint. Defendant requested that the Court dismiss Plaintiff's Section 1983 claims for failure to support the allegations that Defendant maintained the offending policies or customs at issue and for failure to allege incidents similar to Plaintiff's establishing a known need for Defendant to train its employees to avoid the alleged civil rights violations. It further sought dismissal of the common law claims on the basis of state sovereign immunity. On February 19, 2015, the Court dismissed the Complaint with leave to amend on the principal basis that it was factually deficient. ECF No. [14] (the "Order"). Familiarity with the factual background, relevant law and law of the case set forth in the Order is assumed.

As explained in the Order, Plaintiff's allegations in the Complaint that the Warrant which subjected her to arrest and confinement was "a nullity" as of October 28, 2013 amounted to a "legal conclusion couched as a factual allegation" which the Court would not accept as true for purposes of evaluating the Complaint's pleading sufficiency. Order at 8 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Oxford Asset Management Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) ("legal conclusions masquerading as facts will not prevent dismissal")). And, "if the Warrant for violation of Plaintiff's pretrial release conditions remained valid between October 28 and November 7, 2014, Defendant's continued enforcement of the Warrant was proper." *Id*. Thus, "Plaintiff's theory of the case – that Defendant maintains improper practices or policies under which it neglects to ascertain whether there remain criminal charges pending against an individual in its custody –

fails to the extent that Plaintiff cannot allege that Defendant was not under the continuing obligation to enforce judicial orders to keep those individuals in custody." *Id*. at 8-9.

Plaintiff filed her Amended Complaint on March 5, 2015. The Amended Complaint addresses the aforementioned pleading deficiency and Defendant does not take issue with the fact or timing of the Warrant's in/validity. Plaintiff now alleges that "the Warrant was recalled on or about October 28, 2013" and that "on or about November 1, 2013, the Broward County Clerk of Courts' officers specifically notified the Defendant's warrant division that the Warrant had been recalled." Am. Compl. ¶¶ 10-11. Nevertheless, Plaintiff was held by Defendant in jail with no bond continuously from October 30, 2013 to November 7, 2013. *Id*. ¶ 17.

According to Plaintiff, "[o]nly when an attorney was consulted by Plaintiff's family, on or about November 7, 2013, to represent Plaintiff in what they thought was a pending criminal matter, did it come to light that Plaintiff was being held without legal justification." *Id*. ¶ 18. The attorney contacted general legal counsel for BSO and explained that Plaintiff was being held in jail despite having no pending case or sentence. *Id*. ¶ 19. "General legal counsel for Defendant, recognizing that Plaintiff was being held without legal justification, acted immediately, and without any court order necessary, to ensure that Plaintiff was processed and released as swiftly as possible." *Id*. ¶ 20.

As in her original Complaint (with one addition), Plaintiff further alleges that Defendant maintains the following policies or customs:

> [D]irecting law enforcement in other Florida counties to detain individuals for whom there was an active Broward County warrant and, subsequent to that time, when [Defendant] was informed that the State Attorney had declined to file the criminal case out of which the [warrant] arose, of not informing law enforcement in other Florida counties to release the detained individuals.
>
> [D]oes not keep records of people whose Broward County cases terminated via "no information" unless the person was in their custody[, t]hus . . . not only

3

invit[ing] the exact constitutional violation that occurred in this matter, but essentially guarantee[ing] it.

[T]ransporting individuals from jails in other Florida counties ("Transported Broward Inmates") to the Broward County Correctional System without checking, at the time of arrival at the Broward County Correctional System, whether the Transported Broward Inmate had any criminal charges pending.

[I]ndefinitely incarcerating Transported Broward Inmates, once transported to the Broward County Correctional System, without checking whether the Transported Broward Inmate had any criminal charges pending.

[I]ndefinitely incarcerating Transported Broward Inmates without "taking the person before the trial court judge who issued the warrant," contrary to Florida Law.

*Id.* ¶ 21.

Plaintiff again asserts claims for violation of her civil rights under 42 U.S.C. § 1983 (Count I, on the basis of Defendant's alleged "customs or usages", Count II, on the basis of Defendant's alleged "official policies" (pleading those counts in the alternative), and Count III for failure to train) and common law claims of false imprisonment (Count IV) and negligence (Counts V and VI). The instant Motion, filed on March 30, 2015, seeks dismissal as to all but Count IV.

## II.     DISCUSSION

Defendant again challenges the sufficiency of Plaintiff's Section 1983 actions and urges dismissal of her common law claims on the basis of sovereign immunity. The Motion succeeds only with respect to the Section 1983 claims.

### A.     Section 1983 "Custom" and "Policy" Claims (Counts I & II)

Plaintiff's allegations with respect to her allegedly improper incarceration (excepting her substantiation of the Warrant's recall and her subsequent continued incarceration), and with respect to BSO's alleged customs or policies (save for adding that BSO fails to keep records of people whose cases terminated via "no information" unless the person was in their custody), are

4

largely identical to those stated in the original Complaint. The Court therefore proceeds with the same analysis of Plaintiff's pleading sufficiency as stated in the Order. There, the Court explained:

> While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010). . . .
>
> Any person acting under color of state law who violates a constitutional right of another is liable for the injured party's losses. 42 U.S.C. § 1983. "Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury th[en] the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice[; h]owever, the custom need not receive formal approval." *Depew*, 787 F.2d at 1499; *see also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. 2014) ("the challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1330 n. 6 (11th Cir. 2003)). "Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)); *see also McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996) ("A municipality may be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision."); *Congleton v. Gadsden Cnty., Fla.*, 2011 WL 2174350, at *4 (N.D. Fla. June 1, 2011) ("[A] single decision may be enough to establish unofficial policy.").

CASE NO. 14-CIV-62674-BLOOM/Valle

Order at 3-6.

Again, the only factual enhancement Plaintiff provides to substantiate her allegations of BSO's policies and procedures involve her own individual incarceration. Whether those allegations – each of which involves inaction, such as "not informing law enforcement in other Florida counties to release the detained individuals" no longer subject to pending charges and transporting and continuing to incarcerate such individuals "without checking" whether they had any criminal charges pending against them – are sufficient or too conclusory to meet the *Iqbal* standard is a close issue. *Compare Fountain v. City of Lakeland*, 2011 WL 3703454, at *5-6 (M.D. Fla. Aug. 23, 2011) ("reluctantly" declining to dismiss complaint alleging "broad statements" of custom or practice based only on factual allegations involving individual defendant's constitutional violations); *Jarrell v. Geo Grp., Inc.*, 2011 WL 5357630, at *4 (M.D. Fla. Oct. 31, 2011) (denying motion to dismiss where complaint alleged policy or custom substantiated only by individual defendant's experience); *Doe v. Faerber*, 446 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006) (plaintiff sufficiently stated section 1983 claim based on repeated incidents involving only the individual plaintiff); *Congleton v. Gadsden Cnty., Fla.*, 2011 WL 2174350, at *4 (N.D. Fla. June 1, 2011) (court could reasonably infer existence of known widespread practice based on allegations of several incidents involving the individual plaintiff) *with Larosa v. City of Sweetwater*, 2014 WL 235449, at *2 (S.D. Fla. Jan. 22, 2014) (dismissing complaint which "offer[ed] no factual allegations other than [plaintiff's] own arrest and the circumstances surrounding that arrest" to substantiate allegations of a policy or custom); *Ingraham v. Miami-Dade Cnty. Corr. & Rehabilitations Dep't*, 2010 WL 3359445, at *3 (S.D. Fla. May 20, 2010) ("Plaintiff has not alleged any facts demonstrating a widespread practice of such incidents, nor that his was not an isolated incident."); *Moore v. Miami-Dade Cnty.*, 2007

6

CASE NO. 14-CIV-62674-BLOOM/Valle

WL 4644629, at *6 (S.D. Fla. Dec. 10, 2007) ("Here, Plaintiff's conclusory allegations of an unofficial practice are simply not enough. Plaintiff has merely plead single isolated . . . These allegations do not suffice under *Monell* and its progeny to impose municipal liability.").

Here, the narrative Plaintiff recounts regarding her own eventual release from Defendant's custody cuts against her allegations of a consistent or pervasive custom or practice within BSO of failing to keep proper records, diligently inspect or inquire about, or adequately insure that termination of pending criminal charges or recall of a warrant would result in release of individuals incarcerated by BSO. Plaintiff alleges that the attorney hired to defend her in the underlying criminal matter (as to which the State Attorney had declined to file criminal charges and had filed a bill of "no information") contacted general legal counsel for BSO on November 7, 2013 and explained that Plaintiff was being held in jail despite having no pending criminal case. Counsel for BSO "recognize[ed] that Plaintiff was being held without legal justification" and "acted *immediately* . . . to ensure that Plaintiff was processed and released *as swiftly as possible*." Am. Compl.¶ 20 (emphasis added). Plaintiff was released that same day. This implies that Plaintiff's continued detention was an isolated incident rather than one that supports the existence of a widespread policy of improper safeguards and procedures. It undermines the sole factual support Plaintiff provides for her broad statements of BSO policies and customs. The Court, therefore, concludes that the allegations of municipal policy here are simply too conclusory to state a Section 1983 claim for relief.

Because the Court did not reach this issue in its previous Order, Plaintiff will be granted leave to amend Counts I and II of the Complaint in order to correct the pleading deficiency identified here.

B.     Section 1983 "Failure to Train" Claim (Count III)

As the Court previously explained:

> A municipality 'is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [a plaintif's] constitutional rights.'" *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)). . . . "In order to bring a claim of deliberate indifference against a municipality, a plaintiff must be able to point to 'other incidents involving similar facts.'" *Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1278 (S.D. Fla. 2012) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)).

Order at 9-10. That is, "[a]n allegation about an isolated occurrence is not enough to state a claim for deliberate indifference against [a municipal defendant]." *Gross v. White*, 340 F. App'x 527, 531 (11th Cir. 2009); *see Barr v. Gee*, 2010 WL 3002875, at *7 (M.D. Fla. July 28, 2010) (finding that plaintiff failed to state Section 1983 claim because factual allegations involving plaintiff's arrest involved only an "isolated incident" insufficient to notify defendant of the alleged deprivation of constitutional rights). *See also Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) ("[A] plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.").

On that basis, the Court concluded that the single incident of Plaintiff's allegedly improper continued incarceration would be alone insufficient to state a "failure to train" claim under Section 1983, and therefore granted Plaintiff leave to amend her original Complaint. Plaintiff has added nothing to the Amended Complaint to substantiate her allegations of deliberate indifference. Accordingly, Count III of the Amended Complaint is dismissed with prejudice.

C.     Common Law Claims (Counts IV, V & VI)

The Motion does not seek dismissal of Plaintiff's common law claim for false

imprisonment (Count IV). Rather, Defendant argues, in its reply brief, ECF No. [27], that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Defendant raises this issue for the first time in its reply. Accordingly, the Court will not consider it. *See*, *e.g.*, *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court."); *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("Because he raises that argument for the first time in his reply brief, it is not properly before us."); *F.T.C. v. IAB Mktg. Associates, LP*, 972 F. Supp. 2d 1307, 1311 (S.D. Fla. 2013) ("[T]hese arguments are forfeited because they were raised for the first time in a reply brief."); *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered."); *Willis v. DHL Global Customer Solutions (USA), Inc.*, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (collecting cases stating that it is inappropriate to raise new arguments in a reply brief and stating that courts in this district generally do not consider these arguments); *Park City Water Authority, Inc. v. North Fork Apartments*, L.P., 2009 WL 4898354, at *1 n. 2 (S.D. Ala. Dec. 14, 2009) (citing cases from 2009 in over 40 districts in which courts acknowledged the rule that arguments raised for the first time in a reply brief are ordinarily not considered).

As it did with respect to the original Complaint, Defendant again requests dismissal of Plaintiff's negligence claims (Counts V and VI) on sovereign immunity grounds. The Court previously explained:

> While, generally, the State of Florida and its subsidiaries are immune from tort liability, Fla. Const., Art. X, § 13, Fla. Stat. § 768.28 expressly waives sovereign immunity in specific circumstances. *See* Fla. Stat. § 768.28. "Florida courts have recognized two exceptions to that waiver: (1) the discretionary governmental

functions exception; and (2) the public duty doctrine exception." *Lewis v. City of St. Petersburg*, 98 F. Supp. 2d 1344, 1348 (M.D. Fla. 2000).

Under the discretionary governmental function exception, "a governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001) (citing *Dep't of Health & Rehabilitative Servs. v. Yamuni*, 529 So.2d 258, 260 (Fla. 1988)). That is, "basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004) (citation omitted). "First, for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." *Trianon Park Condominium Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 917 (Fla. 1985). Further, "[a]n act is 'discretionary' when all of the following conditions have been met: (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program, or objective; (3) the action requires the exercise of basic policy evaluations, judgments, and expertise on the part of the governmental agency involved and (4) the governmental agency involved possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision." *Diaz-Martinez v. Miami-Dade Cty.*, 2009 WL 2970471, at *16 (S.D. Fla. Jun. 9, 2009) (citing *Trianon*, 468 So. 2d at 918 (adopting test set out in *Evangelical United Brethren Church v. State*, 67 Wash. 2d 246 (Wash. 1965)). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Kaisner v. Kolb*, 543 So.2d 732, 737 (Fla. 1989). Finally, "the Florida Supreme Court [has] described four categories of governmental activities to aid in determining whether a duty of care arises out of a particular government activity: (1) legislative, permitting licensing, and executive officer functions; (2) enforcement of laws and the protection of the public safety; (3) capital improvements and property control operations; and (4) providing professional, educational, and general services for the health and welfare of the citizens." *Tavcar v. City of Riviera Beach*, 2004 WL 2418311 (S.D. Fla. Aug. 9, 2004) (citing *Trianon*, 468 So. 2d at 919).

Within the second category of governmental activities, "[g]overnmental entities may be liable for tortuous conduct committed by a law enforcement officer against an individual when that individual is in the physical custody of law enforcement after a temporary detention or arrest." *Lewis*, 98 F. Supp. 2d at 1349 (citing *Seguine v. City of Miami*, 627 So. 2d 14, 18 (Fla. 3d DCA 1993) (pertaining to "affirmatively negligent acts by police which place a person in a zone of danger when such person is in the physical custody of the police"). Consequently, "[t]here is no sovereign immunity for false arrest." *Dickinson v. Gonzalez*, 839 So. 2d 709, 713 (Fla. 3d DCA 2003) (citing *Lester v. City of Tavares*, 603 So. 2d 18, 19 (Fla. 5th DCA 1992); *Maybin v. Thompson*, 514 So. 2d 1129 (Fla. 2d DCA 1987)); *see also Richardson v. City of Pompano Beach*,

10

> 511 So. 2d 1121, 1124 (Fla. 4th DCA 1987) (governmental immunity statute did not immunize the city from liability for false arrest).  Neither is governmental immunity a bar to claims for false imprisonment. *Andrews v. Florida Parole Comm'n*, 768 So. 2d 1257, 1269 (Fla. 1st DCA 2000) (citing *City of Homestead v. Suarez*, 591 So. 2d 1125, 1126 (Fla. 3d DCA 1992); *City of Miami v. Swift*, 481 So. 2d 26, 27-28 (Fla. 3d DCA 1985); *City of West Palm Beach v. Whittemore*, 453 So. 2d 507, 508 (Fla. 4th DCA 1984)).  More specifically, "a law enforcement officer has discretion and enjoys immunity for his decision as to whether he or she will detain or arrest a person, but once the decision to effect an arrest or detention is made, the officer does not enjoy immunity for his negligent, operational level acts that follow the arrest or detention." *Mosby v. Harrell*, 909 So. 2d 323, 328 (Fla. 1st DCA 2005).

Order at 9-10.

The Court concluded that, "[h]ad Plaintiff properly pleaded that the Warrant became invalid and that Defendant nevertheless continued to incarcerate Plaintiff (based on Defendant's improper policies or practices), her common law claims would properly challenge operational decisions by Defendant with regard to its post-arrest procedures for which Defendant would be liable in tort." *Id*. at 10.  Now that Plaintiff has adequately pleaded that Defendant continued to detain her after her criminal charges were disposed of and the Warrant was withdrawn, her common law claims are sufficiently stated.

Defendant points to *Lovett v. Forman*, 883 So. 2d 319 (Fla. 4th DCA 2004) and *Moore v. De''t of Corr., State of Fla.*, 833 So. 2d 822 (Fla. 4th DCA 2002) to support its position that sovereign immunity bars Plaintiffs suit here because it never owed Plaintiff a common law duty of care with respect to her detention different from the duty owed to the public in general.  Those cases are inapposite.  Indeed, as the Court has stated, "for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." *Trianon*, 468 So. 2d at 917; *see also Pollock*, 882 So. 2d at 935 ("The responsibility to enforce the laws for the good of the public cannot engender a duty to act with care toward any one individual, unless an official assumes a special duty with regard to that

11

person."). *Lovett* and *Moore* apply that principle to immunize a municipal defendant from claims for wrongful arrest or imprisonment where the defendant negligently failed to withdraw or revoke an outstanding capias or warrant. But in those cases, unlike in the one here, the plaintiffs sued on the basis of the initial improper arrest. The plaintiffs' claims, centering on the initial decisions to arrest, were barred because the municipalities did not owe the plaintiffs a special duty of care regarding the activities which precipitated the arrests which was different from the duty owed the public in general. *See Lovett*, 883 So. 2d at 320; *Moore*, 833 So. 2d. at 824. For example, the duty of care owed by the clerk of court to the plaintiff in *Lovett* when he failed to provide information to the sheriff's office that the capias in plaintiff's criminal matter was set aside (resulting, ultimately, in plaintiff being wrongfully arrested and incarcerated for over two months) was the same duty of care he owed to everyone. That duty was to do his job, including disseminating information regarding court matters, competently. However, once an arrest is effected and an individual is in police custody, the scope of the municipality's duty changes. Accordingly, "a law enforcement officer has discretion and enjoys immunity for his decision to detain or arrest a person, but once the decision to effect an arrest or detention is made, the officer does not enjoy immunity for his negligent, operational level acts that follow the arrest or detention." *Mosby*, 909 So. 2d at 328 (citing *Henderson v. Bowden*, 737 So. 2d 532, 536 (Fla. 1999) (police detention "placed [plaintiff] in a foreseeable zone of risk which gave rise to a common-law duty")).

Here, Plaintiff does not contend that her initial arrest was improper. Rather, she argues that BSO's negligence post-arrest caused her continued incarceration when she should properly have been released from custody. Because Plaintiff was in Defendant's custody, Defendant owed her a duty of care different from that owed to the public in general. Defendant's alleged

CASE NO. 14-CIV-62674-BLOOM/Valle

negligence took place, in this context, at the post-arrest operational level. Plaintiff's common law negligence claims can be substantiated and, therefore, escape sovereign immunity on that basis.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Section 1983 claims are dismissed, with leave granted to amend Counts I and II of the Amended Complaint. However, Plaintiff's common law claims are viably stated.

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. The Motion to Dismiss, ECF No. [19] is **GRANTED in part**.

2. Counts I and II of the Amended Complaint, ECF No. [15] are **DISMISSED without prejudice**. Plaintiff is granted final leave to amend her Amended Complaint by or before **May 22, 2015**.

3. Count III of the Amended Complaint is **DISMISSED with prejudice**.

**DONE AND ORDERED** in chambers at Fort Lauderdale, Florida, this 5th day of May, 2015.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

13